STAGEHANDS REFERRAL SERVICE, LLC, International Alliance of Theatrical & Stage Employees and Motion Picture Technicians of the United States and Canada, Local 84, AFL–CIO, Petitioners–Cross–Respondents,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent–Cross–Petitioner.

Nos. 07–2126–ag(L), 07–3103–ag(xap).

United States Court of Appeals, Second Circuit.

March 12, 2009.

Leon M. Rosenblatt, Law Offices of Leon M. Rosenblatt, West Hartford, CT, for Petitioners–Cross–Respondents.

Daniel Blitz, National Labor Relations Board (David Habenstreit, Assistant General Counsel, Ronald Meisburg, General Counsel, John E. Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate General Counsel, Linda Dreeben, Deputy Associate General Counsel, on the brief), Washington, D.C., for Respondent–Cross–Petitioner.

PRESENT: Hon. JOSEPH M. McLAUGHLIN, Hon. RICHARD C. WESLEY, and Hon. PETER W. HALL, Circuit Judges.

## SUMMARY ORDER

Petitioners–Cross–Respondents Stagehands Referral Service, LLC ("SRS") and the International Alliance of Theatrical & Stage Employees and Motion Picture Technicians of the United States and Canada, Local 84, AFL–CIO ("Local 84") (collectively "Union Parties") seek review, pursuant to 29 U.S.C. § 160(e), of the Board's August 31, 2006, 2006 WL 2559825, Order reversing the decision of an administrative law judge ("ALJ") and finding that the Union Parties had violated various provisions of the National Labor Relations Act, 29 U.S.C. § 151, *et seq.,* ("Act") when they stopped referring Stephen Foti for work out of the hiring hall operated by the Union Parties after he was denied membership in Local 84. The NLRB petitions for enforcement of that Order. We assume the parties' familiarity with the underlying facts and procedural history of the case.

## Discussion

This Court's review of the Board's orders is "quite limited." *NLRB v. Katz's Delicatessen of Houston St., Inc.,* 80 F.3d

755, 763 (2d Cir.1996). "We must enforce the Board's order where its legal conclusions are reasonably based, and its factual findings are supported by substantial evidence on the record as a whole." *Id.* In this context, reversal based on a factual question is warranted only if, based on the record as a whole, "no rational trier of fact could reach the conclusion drawn by the Board." *NLRB v. Albany Steel, Inc.,* 17 F.3d 564, 568 (2d Cir.1994) (internal quotation marks omitted). Accordingly, this Court "may not displace the Board's choice between two fairly conflicting views, even though [it] would justifiably have made a different choice had the matter been before [it] *de novo.*" *Newspaper Guild of N.Y., Local No. 3 v. NLRB,* 261 F.3d 291, 301 (2d Cir.2001) (internal quotation marks omitted).

In *Local 18, Operating Engineers,* the Board set forth the analysis used in considering whether a union's conduct with respect to a hiring hall violated Section 8 of the Act:

> When a union prevents an employee from being hired or causes an employee's discharge, it has demonstrated its influence over the employee and its power to affect his livelihood in so dramatic a way that we will infer—or, if you please, adopt a presumption that—the effect of its action is to encourage union membership on the part of all employees who have perceived that exercise of power. But the inference may be overcome, or the presumption rebutted, not only when the interference with employment was pursuant to a valid union-security clause, but also in instances where the facts show that the union action was necessary to the effective performance of its function of representing its constituency.

*Int'l Union of Operating Eng'rs, Local 18, Afl–Cio,* 204 N.L.R.B. 681, 681 (1973) (footnote omitted), *enforcement denied on other grounds,* 496 F.2d 1308 (6th Cir. 1974). Further, the Board has determined that "an exclusive hiring hall must be operated on the basis of objective criteria and standards" and that a labor organization violates the Act when it "refuse[s] to refer [an individual] for employment from its hiring hall ... for arbitrary and invidious reasons, unrelated to any objective standards for referral." *Stage Employees IATSE Local 646 (Parker Playhouse),* 270 N.L.R.B. 1425, 1425 (1984).

The Union Parties argue that there was not substantial evidence to support the Board's conclusion that they impermissibly discriminated against Foti on the basis of his rejected application for membership in Local 84. The facts here present a close case and it is likely that the record might very well support "two fairly conflicting views" on the issue of whether Foti was subject to impermissible discrimination, such that this Court might "justifiably have made a different choice had the matter been before [it] *de novo.*" *NLRB v. G & T Terminal Packaging Co.,* 246 F.3d 103, 114 (2d Cir.2001) (internal quotation marks omitted). Given the deferential standard of review applied to the Board's decision, however, "[w]e may not displace the Board's choice" between those two views. *Id.* (internal quotation marks omitted). During the ALJ hearing in this case, the General Counsel offered evidence that after the May 2004 membership vote, Local 84 Business Manager Charles Buckland told Foti that he would no longer refer him for work. Buckland and Local 84 President Charles Morris both indicated in their testimony that before the membership vote they had not heard anything negative about Foti's job performance, and each suggested that there was some connection between Foti's rejection by the membership and their decision thereafter not to refer him for work. This evidence supports a conclusion that Morris and Buckland were motivated by a concern for

the union and its role in representing its members, such that their decision to stop referring Foti was not motivated by any impermissible animus.

Although the Union Parties' explanation for the decision to stop referring Foti for work is a reasonable one—incompetent workers certainly tarnish a union's reputation with employers—there was evidence in the record discrediting that explanation, and the Board properly relied on it. The record contains evidence supporting the inference that Foti's failed attempt to gain membership motivated Buckland's decision to stop referring him, thus discrediting the Union Parties' explanation for that decision. During the hearing in this case, Foti testified that when he called the hiring hall for work after the May 2004 membership vote, Buckland referred to his rejected membership application and told Foti that Local 84 would no longer refer him for work. The Union Parties' argue that because the ALJ found Foti not to be credible, we cannot accept his testimony on this point. However, the record indicates that the ALJ found all of the hearing witnesses—with the exception of one individual—to be credible and that the ALJ "indirectly" discredited Foti's testimony regarding "his work abilities" because he could not reconcile Foti's testimony on that point with the testimony of other credible witnesses. The ALJ credited Foti's testimony on other issues, particularly his testimony regarding his telephone conversation with Buckland after the May 2004 membership vote. Further, Buckland himself testified that he mentioned the rejected application to Foti when Foti asked for work shortly after the May 2004 meeting.

■ Further, as the Board noted most directly in its order denying the motion for reconsideration in this case, Buckland and Morris made the decision not to refer Foti without conducting any investigation into the members' allegations against him. There was no evidence in the record that any employer or any other union member had complained about Foti's work to Buckland or Morris before they stopped referring him. Prior to the rejection of his application, Buckland had frequently referred Foti for work. This fact might support the Union's assertion that Buckland stopped referring Foti in May 2004 based on his concerns about Foti's performance were it not for Buckland's November 2004 decision to refer Foti for work after receiving notice that Foti had filed an unemployment insurance claim against Local 84. Morris testified that when he received the notice, he called Foti and asked why Foti had not been seeking work from Local 84. Given this evidence, and the deferential standard of review we apply to the Board's decision, there is no basis for this Court to reject the Board's conclusion that the Union Parties impermissibly discriminated against Foti in order to encourage union membership.

■ The Union Parties also argue that there was not substantial evidence to support the Board's conclusion that Foti was subject to disparate treatment such that the explanation for the decision to stop referring him for work from the hiring hall was pretext for prohibited discrimination. We agree. A review of the record indicates that the Board based this finding on a single set of records relating to the tardiness of employees at one venue serviced by Local 84. Nothing in the record supports the Board's conclusion that other employees who were late or who presented safety issues were denied referrals for work. No witness testified to this fact. Given, however, that substantial evidence supports the Board's conclusion that the Union Parties failed to carry their initial burden of rebutting the inference of discrimination, the lack of evidentiary support for the finding of disparate treatment is not a basis for granting the petition for

review or denying the petition for enforcement in this case.

The Union Parties also argue that the Board improperly determined that they bore the burden of demonstrating that there was a legitimate reason for the decision to discontinue referring Foti for work. According to the Union Parties, the Board should have applied *Holo–Krome Co. v. NLRB*, 954 F.2d 108 (2d Cir.1992). The Union Parties argue that, under *Holo–Krome*, rather than relying on a presumption of discrimination, the General Counsel would have been required to prove that the Union Parties had acted with improper motives. We lack jurisdiction to consider this argument, however, because the Union Parties did not raise this issue before the ALJ or the Board. *See* 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."); *NLRB v. GAIU Local 13–B, Graphic Arts Int'l Union*, 682 F.2d 304, 311 (2d Cir. 1982) ("The purpose of this provision is to insure against piecemeal appeals to the court by requiring the parties first to give the Board an opportunity to rule upon all material issues in a case. The Board has implemented this statutory policy by adopting regulations requiring the parties to raise by exceptions or cross-exceptions all issues they desire the Board to consider in reviewing an ALJ's decision.").

■ Finally, the Union Parties argue that the Board's acceptance of the ALJ's credibility findings cannot be reconciled with its determination that the Union Parties had engaged in impermissible discrimination. According to the Union Parties, by accepting the credibility findings of the ALJ, the Board necessarily concluded that "Foti was a deficient worker; that Buckland and Morris found out about it only after Foti's [sic] applied for membership; and that this new-found knowledge was the real reason for Foti's not receiving referrals after May 24." This characterization, however, is an oversimplification of the evidence at the hearing. Neither Morris nor Buckland testified that they actually knew that Foti was an incompetent worker. Rather, their testimony suggested that they had taken the union vote to mean that Foti was incompetent and had accepted that fact without investigating it. Accordingly, even accepting Buckland and Morris's testimony as credible, the Board was entitled to conclude that they had made the decision to stop referring Foti based on speculation regarding his incompetence, without evidence to support it— which was the basis for the Board's holding that the Union and SRS had failed to rebut the presumption of impermissible discrimination.

For the reasons stated above, the petition for review is **DENIED** and NLRB's cross-petition for enforcement is **GRANTED.**